Lozier *v.* New York Central Rail Road Co.·

---

## LOZIER *vs.* THE NEW YORK CENTRAL R. R. COMPANY.

West Front street, in the village of Lockport, crosses Green street at right angles, and the plaintiff was the owner in fee of lot 207, situate in the corner formed by those streets. That lot was a part of original lot 19, which had Green street on the south, and West Front street on the east lines, four rods on Green street and ten rods on West Front street, and a part of lot 17, lying west of 19. That lot was, long ago, divided into five lots fronting on West Front street. In 1825, C. conveyed in fee certain lots to S., described as "village lots Nos. 11, 12, 14, 15, 17, 19 and 20, on Green street," according to a map referred to. Lot 20 was south of lot 19, on the other side of Green street.

*Held* that C.'s conveyance to S. of lots 19 and 20, included the whole of Green street lying between them, as designated on the map, and the west half of West Front street, on the east of those lots, and also carried lot 17 west of lot 19 south to the centre of Green street, so as to embrace the land claimed in this action, being the north half of Green street.

In 1829 S. conveyed in fee to O. "all of a certain piece or parcel of land, being village lots Nos. 11, 15, 17, 19, on the north side of Green street." *Held* that it was not the intention of the parties to this deed to exclude the north half of Green street.

S. subsequently conveyed·certain lots to D., referring to the map, or survey, of a part of the village, as "being village lots 199, 207, &c. on the west side of Front street, according to the aforesaid map, reference being thereto had." *Held,* that there was no intention to exclude the land in the streets.

In 1836, D., in conveying lots 205 and 207 to T., after referring to the map, *bounds* them on the east by Lock (formerly West Front) street 66 feet, and

"on the south on Green street 99 feet, and being in a body in the corner of Lock street and Green street, containing more or less, according to the aforesaid map, reference being thereunto had." *Held* that this description carried the land in fee to the centre of the streets.

If it is the intention of the grantor who conveys lots having streets along them, to exclude the streets, his description must be clear and certain, showing such intention.

Ejectment is a proper remedy where land owned in fee by an individual, subject to the public easement of a highway, is appropriated by a rail road company, for the use of its road.

ACTION of ejectment for land situate in Green street, in the village of Lockport, upon which the defendant constructed its rail road. West Front, now Lock street, crosses Green street at right angles, and the plaintiff is the owner in fee of lot 207, situate in the corner formed by these streets. This lot, 207, is a part of original lot 19, which had Green street on the south and West Front street on the east lines, four rods on Green street and ten rods on West Front street, and a part of lot 17, lying west of 19. It was many years ago divided into five lots fronting on West Front, now Lock street, 33 feet each, and extending back across lot 19 and outer lot 17, lying west of 19, so as to give a depth of 99 feet. The land claimed in this action is the north half of Green street. It is a strip two rods in width and 99 feet in length. The common source of title is one Jared Comstock, who, in 1825, conveyed in fee certain lots, to Lyman A. Spaulding, described as "village lots Nos. 11, 12, 14, 15, 17, 19 and 20, each containing about one fourth of an acre, on Green street in said village of Lockport, according to a supplementary map or survey," referred to. Lot 20 is south of lot 19, upon the other side of Green street. Spaulding, in 1829, conveyed in fee to Olmstead "all of a certain piece or parcel of land, being village lots Nos. 11, 15, 17, 19, on the North side of Green street aforesaid." Olmstead, in 1831, conveyed in fee to Lyman A. Spaulding, "lots 199, 201, 203, 205, 207, on the west side of West Front street," referring to a map. Spaulding, the

same year, conveyed in fee, to one Davenport, referring to a map, "village lots 199, 201, 203, 205, 207, on the west side of Front street, (now Lock street,) in said village, being each 33 feet wide in front along said West Front street (now Lock street) and extending back therefrom at right angles, of the same width, 99 feet, and being in a body in the corner of West Front (now Lock) street and Green street, and containing more or less, according to the aforesaid map, reference being thereunto had." Davenport, in 1836, conveyed in fee to one Thomas, referring to the map, "lots 207 and 205, which said lots 207 and 205 are bounded east by Lock street, 66 feet, extending west from Lock street at right angles, and of the same width, 99 feet, and being in a body in the corner of said Lock street and Green street, containing more or less according to the aforesaid map, reference being thereunto had." There are some other conveyances *since* the above, and the conveyance to the plaintiff, whose conveyance is from the sheriff, with the description "village lots Nos. 203, 205 and 207, of Lock street, in said village of Lockport." The court decided that the plaintiff was not the owner of, nor in possession of, nor entitled to the possession of, the lands and premises described in the complaint, and dismissed the complaint, and ordered judgment for the defendant. The plaintiff excepted, and appealed to the general term of this court.

*Southworth & Porter*, for the plaintiff.

*A. P. Lanning*, for the defendant.

*By the Court*, MARVIN, J. In *Bissell* v. *The New York Central Rail Road Company*, (23 *N. Y. Rep.* 61,) it was held by the court of appeals that a conveyance simply designating the lot upon a map or plat made by the grantor, of lands in a city or village, as between the grantor and grantee,

carries the land to the centre of the street, though the pub-
lic may not have adopted the street so marked upon the map
as a street or highway. The case is ample authority for
holding, in the present case, that Comstock's conveyance to
Spaulding, in 1825, of lots 19 and 20, included the whole of
Green street, lying between them, as designated on the map,
and the west half of West Front street, on the east of these
lots, and also carried lot 17 west of lot 19, south to the cen-
tre of Green street. This embraces all the land in question
in this action. The description in the deed from Spaulding
to Olmstead is somewhat different: "All of a certain piece
or parcel of land, being village lots Nos. 11, 15, 17 and 19,
on the north side of Green street." Does this description
exclude Green street? In *Bissell* v. *The New York Central
Rail Road Company,* the general rule of construction, where
land is bounded by a highway, is stated, and it is said that
it is based upon the supposed intention of the parties. In
this case it cannot be supposed that Spaulding intended to
exclude the north half of Green street. It will be noticed
that all the lots are referred to as "all of a certain piece or
parcel of land;" and these lots are on the north side of the
street. There was a lot (13) between lots 11 and 15. In
*Jackson* v. *Hathaway,* (15 *John.* 447,) it was conceded that
the limits of the land did not include the road, ( *p.* 453,) and
the decision was based upon this position. (*See also Adams*
v. *The Saratoga and Washington Rail Road Co.,* 11 *Barb.*
414, 452.) In my opinion, it was not the intention of the
parties to exclude the north half of Green street. It is not
perhaps very material to decide the question arising upon
the description in the deed from Spaulding to Olmstead, as
Olmstead subsequently conveyed lots 199, 201, 205, 207, on
the west side of Front street back to Spaulding, who subse-
quently conveyed these lots to Davenport, referring to the
map or survey of a part of the village, as "being village lots
199, 201, 203, 205 and 207, on the west side of Front street,

now Lock street, 33 feet wide, &c. and being in a body in the corner of West Front, now Lock street, according to the aforesaid map, reference being thereto had." Here the lots are designated by their numbers as upon the map, and the streets along which they lie are specified. There was no reason why the land in the streets should be excluded; and in my opinion there was no such intention. It was necessary to maintain the streets, if there were other lots on other streets, of the same numbers, as there undoubtedly were.

If it is the intention of the grantor who conveys lots having streets along them, to exclude the streets, his description must be clear and certain, showing such intention. (*See Adams* v. *Saratoga and Washington Rail Road Co.*, 11 *Barb*. 452, *and cases cited*.) Davenport, in conveying the lot in question, and 205, the lot north of it, to Thomas, after referring to the maps, &c. *bounds* them on the east by Lock street 66 feet, and "bounded on the south on Green street 99 feet, and being in a body in the corner of Lock street and Green street, containing more or less according to the aforesaid map, reference being thereunto had." It is entirely clear, by all the authorities, that this description carried the land in fee to the center of the streets. The sheriff's deed designated the land as lots 205 and 207 of Lock street in the village of Lockport. I have no doubt the plaintiff was seised in fee of the land described in the complaint, and that the learned justice erred in deciding otherwise.

But for the decisions of the court of appeals in *Carpenter* v. *The Oswego and Syracuse Rail Road Co.* (24 *N. Y. Rep.* 655,) and *Wager* v. *The Troy Union Rail Road Co.* (25 *id.* 526,) I should have doubted, very much, whether the remedy by ejectment was proper, in a case like the present. I think I should have concurred with Sutherland, justice, in dissenting in the last case, (*p.* 539,) and with Willard, justice, in *Adams* v. *Saratoga and Washington Rail Road Co.* (11 *Barb*. 454.) The cases, however, in the 24th and 25th

New York Reports are decisive upon the question, and hold that ejectment is a proper remedy. It follows that the judgment must be reversed and there must be a new trial; costs to abide the event.

[ERIE GENERAL TERM, September 5, 1864. *Davis, Grover, Daniels* and *Marvin,* Justices.]