ST. WILLIAM'S CHURCH, RAQUETTE LAKE, NEW YORK, Respondent, *v.* PEOPLE OF THE STATE OF NEW YORK, Appellant.

Argued May 29, 1946; decided February 27, 1947.

*Nathaniel L. Goldstein,* Attorney-General (*Orrin G. Judd, Charles F. Steele, Herbert A. Einhorn* and *Irving I. Waxman* of counsel), for appellant.

*J. Theodore Cross* and *Francis C. Steates* for respondent.

Judgments reversed and complaint dismissed, with costs in all courts, on the ground that there is no evidence of occupation or constructive possession of the particular lots in suit for such a time or in such a manner as to establish title by adverse possession in any person or persons from whom the plaintiff claims to have derived its title. We decide no other question. [See 296 N. Y. 1000.]

Concur: LOUGHRAN, Ch. J., LEWIS, CONWAY, THACHER and DYE, JJ. FULD, J., dissents in opinion in which DESMOND, J., concurs.

FULD, J. (dissenting). Plaintiff asserts title to two small lots — each 60 by 136 feet — situate on a hillside at the north end of the hamlet of Raquette Lake in the Adirondacks. When the region was still a wilderness, Alvah Dunning — not a stranger to our reports (*People ex rel. Marsh* v. *Campbell,* 143 N. Y. 335; *People* v. *Ladew,* 189 N. Y. 355; *People* v. *Ladew,* 237 N. Y. 413) — came upon the land and, according to plaintiff, occupied a tract of some 30 acres which included both the hillside and what is now the village proper. Dunning eventually deeded this entire tract to the Raquette Lake Railway Company, and it is through them that plaintiff's claim of title comes.

By virtue of various conveyances and partitions, the State holds an undivided interest in a 7,000 acre tract embracing the land in question. When, in 1938, plaintiff started to build upon the two lots, the State ordered it to desist. Plaintiff thereupon commenced the present action against the State to quiet title. In defending, the State asserted title in itself.

The trial court found for plaintiff, holding that it had acquired valid title to the lots involved through adverse possession by its predecessors, and a unanimous Appellate Division affirmed. A majority of this court has, however, voted to reverse the judgment and to dismiss the complaint on the ground that evidence of adverse possession is lacking. In that determination I cannot concur. I agree with the trial court and with the

Appellate Division that plaintiff's proof was more than sufficient to support the finding below that the land was adversely held for upwards of fifty-two years — by Dunning for seventeen years, by his successors for thirty-five years more.

Although adverse possession may not run against the State's interest in public lands (*Hinkley* v. *State of New York,* 234 N. Y. 309; *People* v. *Baldwin,* 233 N. Y. 672, affg. 197 App. Div. 285), that immunity does not extend to the interests of those who hold as tenants in common with the State. (Cf., *e.g., Sweetland* v. *Buell,* 164 N. Y. 541; *Archibald* v. *New York Central & H. R. R. R. Co.,* 1 App. Div. 251, affd. 157 N. Y. 574; *Culver* v. *Rhodes,* 87 N. Y. 348; *Florence* v. *Hopkins,* 46 N. Y. 182, 186; *Ward* v. *Dewey,* 16 N. Y. 519.) Plaintiff herein does not assert title by virtue of adverse possession against the State, but rather claims by succession, through adverse possession, to the title of the State's cotenants — and, I note, the judgment below, declaring plaintiff's rightful possession and ownership of the premises in question " in fee simple absolute subject only to such rights as the defendant * * * [the State] may have," fully recognizes this concept.

### *Adverse possession by Alvah Dunning*

Where claim of title is not founded upon a written instrument, judgment or decree, only the premises actually occupied in the manner prescribed by statute — that is, " protected by a substantial inclosure " or " usually cultivated or improved " — are deemed to have been held adversely (Civ. Prac. Act, §§ 39, 40). In determining the sufficiency of such cultivation or improvement, however, the words of the statute are to be construed, not in a narrow and technical sense, but rather with reference to the nature, character and location of the property under consideration. (See *Ramapo Mfg. Co.* v. *Mapes,* 216 N. Y. 362; *Koch* v. *Ellwood,* 138 App. Div. 584; *Shinnecock Hills & Peconic Bay Realty Co.* v. *Aldrich,* 132 App. Div. 118, affd. 200 N. Y. 533.) For, as pointed out in *Monnot* v. *Murphy* (207 N. Y. 240, 245), the object of the statute " is that the real owner may, by unequivocal acts of the usurper, have notice of the hostile claim and be thereby called upon to assert his legal title." (See, also, *Trustees, Town of East Hampton* v. *Kirk,* 84 N. Y. 215, 220.)

The record before us establishes that in 1882 Dunning, an **Adirondacks guide, a gypsy-like character,** entered upon a

woodland tract, primitive, completely isolated, consisting of some 30 acres. It was — so the trial court found as a fact — " enclosed by natural boundaries in keeping with and sufficient for the locality and the times ", for it was bounded by the lake on the east, by swampland on the south and west, and by the crest of a hill on the north. This little domain Dunning claimed as his own, and drove from it all who chanced to enter. He cleared a site for his cabin and garden and erected thereon his home. The remainder of the tract he utilized for the satisfaction of his frugal needs: fish and game for food, timber for fuel and building purposes, maple trees for sugar and syrup.

Having those facts in mind, it would be most unreal and unreasonable to require, as a condition precedent to the successful assertion of an adverse possession claim, that Dunning fence in the entire area or reduce it all to actual tillage. (See *Munro* v. *Merchant*, 28 N. Y. 9, 44.) In my view, he did all that was necessary for those times, all that was required for that locality, in actively cultivating and improving a part of the tract and in holding the remainder in subservience to, and for the benefit of, that portion.

Even if Dunning's seventeen-year occupation were to be disregarded, the finding that plaintiff had acquired title could still be predicated upon proof of his successors' possession.

*Adverse possession by Dunning's successors*

Unlike Dunning's possession — based solely upon sheer naked occupation — his successors' claim to the premises was founded upon a written instrument. Accordingly, different rules apply. By virtue of statute, continued occupation of " some part " is " deemed " adverse possession of all of the premises " included in the instrument " (Civ. Prac. Act, § 37). There is no dispute here that " some part " of the tract acquired by the railway company was continuously occupied and improved. Thus, shortly after the execution and delivery of Dunning's deed in June of 1899, his grantee entered into possession and built its railroad and terminal facilities. Upon the lands south of the hillside, it constructed its lines of track, a station, water supply and sewerage disposal system, an ice house, a store, other buildings, and docks and wharves along the lake front. In addition, its lessees carried on a mercantile business, operated a hotel and a sawmill, and aided in the construction of roads.

The hillside, it appeared from the evidence, was treated as subservient to the remainder of the land included in the Dunning deed and was utilized for its benefit. For example, the lumber for the railway company's docks and buildings, the stone for foundations came from the hillside area. And after it had been cleared of brush, the company's employees — apparently with its consent — there established homes, building houses and cultivating gardens along the whole length of the slope.

In the light of the uncontroverted evidence, it seems clear that the railway company between 1899 and 1936 had continuous and actual possession of a large part of the premises deeded by Dunning. That being so, it follows that all of " the premises so included [in the Dunning deed] are deemed to have been held adversely " (Civ. Prac. Act, § 37). There was, in short, more than sufficient to justify the trial court's conclusion that plaintiff had proven adverse possession not only as to the center of the hamlet but also as to the hillside.

Protection of the State's interest demands neither a strained construction of the record nor a forced application of the rules governing adverse possession. In this case, the State's undivided share as determined by the trial court, if set off in severalty, would amount to slightly over 4,800 acres out of a 7,000 acre tract. There thus remain more than 2,000 acres against which these two building lots of plaintiff — 120 feet by 136 feet in size — can be charged. Indeed — since the land still remaining in the tract and not set off in severalty is more than ample to satisfy the State's claims in full — even if this action be regarded as establishing title by adverse possession to the whole 30 acre tract included in Dunning's deed, I cannot see how the State's interests are in any way prejudiced or injured.

The judgments should be affirmed, with costs.