Marion L. Van Valkenburgh, Plaintiff, and Joseph D. Van Valkenburgh, Appellant, *v.* Mary Lutz, Individually and as Executrix of William Lutz, Deceased, Respondent.

Argued January 10, 1952; decided April 23, 1952.

*John F. Loonam* for appellant. I. William Lutz and anyone claiming under him could never obtain title to the land because, as a matter of law, the alleged occupancy by William Lutz was not sufficient ever to ripen into title by adverse possession. (*Monnot* v. *Murphy,* 207 N. Y. 240; *Belotti* v. *Bickhardt,* 228 N. Y. 296; *Ramapo Mfg. Co.* v. *Mapes,* 216 N. Y. 362; *Pope* v. *Hanmer,* 74 N. Y. 240; *La Frombois* v. *Jackson,* 8 Cow. 589; *Arents* v. *Long Island R. R. Co.,* 89 Hun 126, 156 N. Y. 1; *St. William's Church* v. *People,* 296 N. Y. 861; *Mission of Immaculate Virgin* v. *Cronin,* 143 N. Y. 524; *De Lancey* v. *Piepgras,* 138 N. Y. 26; *Jackson* v. *Schoonmaker,* 2 Johns. 230. II. Even if Lutz or those claiming under him had fulfilled every requirement necessary to create a title in them by adverse possession, the fact that title remains in appellant is *res judicata.* (*Parsons* v. *Johnson,* 68 N. Y. 62; *Northern Pacific Railway* v. *Slaght,* 205 U. S. 122; *United States* v. *California & Ore. Land Co.,* 192 U. S. 355; *Southern Pacific Railr'd.* v. *United States,* 168 U. S. 1; *Cromwell* v. *County of Sac,* 94 U. S. 351; *Pray* v. *Hegemen,* 98 N. Y. 351; *Hines* v. *Hearn,* 232 App. Div. 210; *Black* v. *State of New York,* 195 Misc. 484.) III. William Lutz, or anyone claiming from, through, or under him is estopped from claiming any

estate greater than an easement in three of these four lots. (*Grissler* v. *Powers,* 53 How. Prac. 194; *Ward* v. *Davega City Radio,* 163 Misc. 335; *Hartmann* v. *Time, Inc.,* 166 F. 2d 127; *Furman* v. *Furman,* 287 N. Y. 772; *Matter of New York State Labor Relations Bd.* v. *Holland Laundry,* 294 N. Y. 480.)

*Thomas P. Mesick* for respondent. I. Adverse possession has been established factually and legally. (*Belotti* v. *Bickhardt,* 228 N. Y. 296; *La Frombois* v. *Jackson,* 8 Cow. 589; *Crary* v. *Goodman,* 22 N. Y. 170; *Barnes* v. *Light,* 116 N. Y. 34; *Monnot* v. *Murphy,* 207 N. Y. 240; *Sherman* v. *Kane,* 86 N. Y. 57; *Baker* v. *Oakwood,* 123 N. Y. 16.) II. There can be no estoppel.

DYE, J. These consolidated actions were brought to compel the removal of certain encroachments upon plaintiffs' lands, for delivery of possession and incidental relief. The subject property consists of four unimproved building lots designated as 19, 20, 21 and 22 in block 54 on the official tax map of the city of Yonkers, N. Y. These lots together form a parcel somewhat triangular in shape with dimensions of approximately 150 by 126 by 170 feet fronting on Gibson Place, a street to be laid out within the subdivision running in a northeasterly direction from Leroy Avenue and now surfaced for automobile travel as far as lots 26, 27 and 28. The subject premises were purchased by the plaintiffs from the city of Yonkers by deed dated April 14, 1947. At that time the defendants were, and had been since 1912, owners of premises designated as lots 14 and 15 in block 54, as shown on the same map. The defendants' lots front on Leroy Avenue and adjoin lot 19 owned by the plaintiffs at the rear boundary line. All of these lots, though differently numbered, appear on a map of the subdivision of the Murray Estate opened prior to 1912 and numbering 479 lots. At that time that part of the Murray subdivision was covered with a natural wild growth of brush and small trees.

The defendants interposed an answer denying generally the allegations of the complaint and alleging as an affirmative defense, and as a counterclaim, that William Lutz had acquired title to the subject premises by virtue of having held and possessed the same adversely to plaintiffs and predecessors for upwards of thirty years.

The issue thus joined was tried before Hon. FREDERICK P. CLOSE, Official Referee, who found that title to said lots " was perfected in William Lutz by virtue of adverse possession by the year 1935 " and not thereafter disseized. The judgment entered thereon in favor of the defendants was affirmed in the Appellate Division, Second Department, without opinion, one Justice dissenting on the ground that the evidence was insufficient to establish title by adverse possession.

To acquire title to real property by adverse possession not founded upon a written instrument, it must be shown by clear and convincing proof that for at least fifteen years (formerly twenty years) there was an " actual " occupation under a claim of title, for it is only the premises so actually occupied " and no others " that are deemed to have been held adversely (Civ. Prac. Act, §§ 34, 38, 39). The essential elements of proof being either that the premises (1) are protected by a substantial inclosure, or are (2) usually cultivated or improved (Civ. Prac. Act, § 40).

Concededly, there is no proof here that the subject premises were " protected by a substantial inclosure " which leaves for consideration only whether there is evidence showing that the premises were cultivated or improved sufficiently to satisfy the statute.

We think not. The proof concededly fails to show that the cultivation incident to the garden utilized the whole of the premises claimed. Such lack may not be supplied by inference on the showing that the cultivation of a smaller area, whose boundaries are neither defined nor its location fixed with certainty, " must have been * * * substantial " as several neighbors were " supplied * * * with vegetables ". This introduces an element of speculation and surmise which may not be considered since the statute clearly limits the premises adversely held to those " actually " occupied " and no others " (Civ. Prac. Act, § 39) which we have recently interpreted as requiring definition by clear and positive proof (*St. William's Church* v. *People*, 296 N. Y. 861, revg. 269 App. Div. 874, motion for reargument denied 296 N. Y. 1000).

Furthermore, on this record, the proof fails to show that the premises were improved (Civ. Prac. Act, § 40). According to the proof the small shed or shack (about 5 by 10½ feet)

which, as shown by survey map, was located on the subject premises about 14 feet from the Lutz boundary line. This was built in about the year 1923 and, as Lutz himself testified, he knew at the time it was not on his land and, his wife, a defendant here, also testified to the same effect.

The statute requires as an essential element of proof, recognized as fundamental on the concept of adversity since ancient times, that the occupation of premises be " under a claim of title " (Civ. Prac. Act, § 39), in other words, hostile (*Belotti* v. *Bickhardt,* 228 N. Y. 296), and when lacking will not operate to bar the legal title (*Doherty* v. *Matsell,* 119 N. Y. 646), no matter how long the occupation may have continued (*La Frombois* v. *Jackson,* 8 Cow. 589; *Colvin* v. *Burnet,* 17 Wend. 564).

Similarly, the garage encroachment, extending a few inches over the boundary line, fails to supply proof of occupation by improvement. Lutz himself testified that when he built the garage he had no survey and thought he was getting it on his own property, which certainly falls short of establishing that he did it under a claim of title hostile to the true owner. The other acts committed by Lutz over the years, such as placing a portable chicken coop on the premises which he moved about, the cutting of brush and some of the trees, and the littering of the property with odds and ends of salvaged building materials, cast-off items of house furnishings and parts of automobiles which the defendants and their witnesses described as " personal belongings ", " junk ", " rubbish " and " debris ", were acts which under no stretch of the imagination could be deemed an occupation by improvement within the meaning of the statute, and which, of course, are of no avail in establishing adverse possession.

We are also persuaded that the defendant's subsequent words and conduct confirms the view that his occupation was not " under a claim of title ". When the defendant had the opportunity to declare his hostility and assert his rights against the true owner, he voluntarily chose to concede that the plaintiffs' legal title conferred actual ownership entitling them to the possession of these and other premises in order to provide a basis for establishing defendant's right to an easement by adverse possession — the use of a well-defined " traveled way " that crossed the said premises. In that action (*Lutz* v. *Van*

*Valkenburgh,* 274 App. Div. 813), William Lutz, a defendant here (now deceased), chose to litigate the issue of title and possession and, having succeeded in establishing his claim of easement by adverse possession, he may not now disavow the effect of his favorable judgment (*Goebel* v. *Iffla,* 111 N. Y. 170), or prevent its use as evidence to show his prior intent. Declarations against interest made by a prescriptive tenant are always available on the issue of his intent (6 Wigmore on Evidence, § 1778).

On this record we do not reach the question of disseisin by oral disclaimer, since the proof fails to establish actual occupation for such time or in such manner as to establish title. What we are saying is that the proof fails to establish actual occupation for such a time or in such a manner as to establish title by adverse possession (Civ. Prac. Act, §§ 39, 40; *St. William's Church* v. *People, supra*).

The judgments should be reversed, the counterclaim dismissed and judgment directed to be entered in favor of plaintiff Joseph D. Van Valkenburgh for the relief prayed for in the complaint subject to the existing easement (*Lutz* v. *Van Valkenburg,* 274 App. Div. 813), with costs in all courts.

FULD, J. (dissenting). In my judgment, the weight of evidence lies with the determination made by the court at Special Term and affirmed by the Appellate Division. But whether that is so or not, there can be no doubt whatsoever that the record contains some evidence that the premises here involved were occupied by William Lutz, defendant's late husband, for fifteen years under a claim of title — and that, of course, should compel an affirmance.

The four lots in suit, located in the city of Yonkers, comprise a fairly level parcel of land, triangular in shape, with approximate dimensions of 150 by 126 by 170 feet. It is bounded on the north by a " traveled way ", on the west and south by Gibson Place, an unopened street, and on the southeast by a vacant lot. Immediately to the east of the parcel, the land descends sharply to Leroy Avenue, forming a steep hill; on the hill are situated two lots, purchased by Lutz in 1912, upon which his family's home has stood for over thirty years.

Wild and overgrown when the Lutzes first moved into the neighborhood, the property was cleared by defendant's husband

and had been, by 1916, the referee found, developed into a truck farm " of substantial size ". Lutz, together with his children, worked the farm continuously until his death in 1948; indeed, after 1928, he had no other employment. Each year, a new crop was planted and the harvest of vegetables was sold to neighbors. Lutz also raised chickens on the premises, and constructed coops or sheds for them. Fruit trees were planted, and timber was cut from that portion of the property not used for the farm. On one of the lots, Lutz in 1920 built a one-room dwelling, in which his brother Charles has lived ever since.

Although disputing the referee's finding that the dimensions of Lutz's farm were substantial, the court's opinion fails to remark the plentiful evidence in support thereof. For instance, there is credible testimony in the record that " nearly all " of the property comprised by the four lots was cultivated during the period to which the referee's finding relates. A survey introduced in evidence indicates the very considerable extent to which the property was cultivated in 1950, and many witnesses testified that the farm was no larger at that time than it had ever been. There is evidence, moreover, that the cultivated area extended from the " traveled way " on *one side* of the property to a row of logs and brush — placed by Lutz for the express purpose of marking the farm's boundary — at the *opposite end* of the premises.

According to defendant's testimony, she and her husband, knowing that they did not have record title to the premises, intended from the first nevertheless to occupy the property as their own. Bearing this out is the fact that Lutz put down the row of logs and brush, which was over 100 feet in length, to mark the southwestern boundary of his farm; this marker, only roughly approximating the lot lines, extended beyond them into the bed of Gibson Place. The property was, moreover, known in the neighborhood as " Mr. Lutz's gardens ", and the one-room dwelling on it as " Charlie's house "; the evidence clearly indicates that people living in the vicinity believed the property to be owned by Lutz. And it is undisputed that for upwards of thirty-five years — until 1947, when plaintiffs became the record owners — no other person ever asserted title to the parcel.

With evidence such as that in the record, I am at a loss to understand how this court can say that support is lacking for the finding that the premises had been occupied by Lutz under a claim of title. The referee was fully justified in concluding that the character of Lutz's possession was akin to that of a true owner and indicated, more dramatically and effectively than could words, an intent to claim the property as his own. Recognizing that " A claim of title may be made by acts alone, quite as effectively as by the most emphatic assertions " (*Barnes* v. *Light*, 116 N. Y. 34, 39), we have often sustained findings based on evidence of actual occupation and improvement of the property in the manner that " owners are accustomed to possess and improve their estates ". (*La Frombois* v. *Jackson*, 8 Cow. 589, 603; see, also, *Belotti* v. *Bickhardt*, 228 N. Y. 296, 302; *Monnot* v. *Murphy*, 207 N. Y. 240, 244–245; *Barnes* v. *Light, supra*, 116 N. Y. 34, 39; *Abeel* v. *Van Gelder*, 36 N. Y. 513, 515; *Smith* v. *Egan*, 225 App. Div. 586; see, also, *McCue* v. *Carlton*, 399 Ill. 11, 16–17; *Rude* v. *Marshall*, 54 Mont. 27, 31–32; 4 Tiffany, Real Property [3d ed., 1939], § 1148.) That Lutz knew that he did not have the record title to the property — a circumstance relied upon by the court — is of no consequence, so long as he intended, notwithstanding that fact, to acquire and use the property as his own. As we stated in *Ramapo Mfg. Co.* v. *Mapes* (216 N. Y. 362, 370–371), " the *bona fides* of the claim of the occupant is not essential and it will not excuse the negligence of the owner in forbearing to bring his action until after the time in the Statute of Limitations shall have run against him to show that the defendant knew all along that he was in the wrong. (*Humbert* v. *Rector, etc., of Trinity Church*, 24 Wend. 587.) "

Quite obviously, the fact that Lutz alleged in the 1947 easement action — twelve years after title had, according to the referee, vested in him through adverse possession — that one of the plaintiffs was the owner of three of the lots, simply constituted evidence pointing the other way, to be weighed with the other proof by the courts below. While it is true that a disclaimer of title by the occupant of property, made before the statutory period has run, indelibly stamps his possession as non-adverse and prevents title from vesting in him (see, eg., *De Lancey* v. *Hawkins*, 23 App. Div. 8, affd. 163 N. Y. 587; *Luce* v.

*Carley,* 24 Wend. 451; *Colvin* v. *Burnet,* 17 Wend. 564, 569; *Bissell* v. *Georger,* 122 Misc. 301; see, also, *Rung* v. *Shoneberger,* 2 Watts [Pa.] 23; *Smith* v. *Vermont Marble Co.,* 99 Vt. 384), a disclaimer made after the statute has run carries with it totally different legal consequences. Once title has vested by virtue of adverse possession, it is elementary that it may be divested, not by an oral disclaimer, but only by a transfer complying with the formalities prescribed by law. (See *Baker* v. *Oakwood,* 123 N. Y. 16; *Sherman* v. *Kane,* 86 N. Y. 57; see, also, *Strong* v. *Baldwin,* 154 Cal. 150; *Johnston* v. *Masterson,* 397 Ill. 168; *Lamoreaux* v. *Creveling,* 103 Mich. 501; 4 Tiffany, *op. cit.,* §§ 1171, 1172.) Hence, an oral acknowledgment of title in another, made after the statutory period is alleged to have run, " is only evidence tending to show the character of the previous possession." (*Smith* v. *Vermont Marble Co., supra,* 99 Vt. 384, 394; see, also, *Lowe* v. *Cox,* 210 Ark. 169; *Carroll* v. *Rabberman,* 240 Ill. 450; *Rennert* v. *Shirk,* 163 Ind. 542; *Maloney* v. *Bedford,* 290 Ky. 647; *Church* v. *Burghardt,* 25 Mass. 327; *Todd* v. *Weed,* 84 Minn. 4; *Meier* v. *Meier,* 105 Mo. 411; *Harjo* v. *Mathis,* 170 Okla. 523; *Weed* v. *Keenan,* 60 Vt. 74.) Here, Official Referee CLOSE, of the opinion that the 1947 admission was made by Lutz under the erroneous advice of his attorney (cf. *Shirey* v. *Whitlow,* 80 Ark. 444, 446–447), chose to rest his decision rather on evidence of Lutz's numerous and continual acts of dominion over the property — proof of a most persuasive character. Even if we were to feel that the referee was mistaken in so weighing the evidence, we would be powerless to change the determination, where, as we have seen, there is some evidence in the record to support his conclusion.

In view of the extensive cultivation of the parcel in suit, there is no substance to the argument that the requirements of sections 39 and 40 of the Civil Practice Act were not met. Under those provisions, only the premises " actually occupied " in the manner prescribed — that is, " protected by a substantial inclosure " or " usually cultivated or improved "— are deemed to have been held adversely. The object of the statute, we have recognized, " is that the real owner may, by unequivocal acts of the usurper, have notice of the hostile claim and be thereby called upon to assert his legal title." (*Monnot* v. *Murphy,*

*supra,* 207 N. Y. 240, 245; see, also, *Trustees of Town of East Hampton* v. *Kirk,* 84 N. Y. 215, 220.) Since the character of the acts sufficient to afford such notice '' depends upon the nature and situation of the property and the uses to which it can be applied '', it is settled that the provisions of sections 39 and 40 are to be construed, not in a narrow or technical sense, but with reference to the nature, character, condition, and location of the property under consideration. (See *Ramapo Mfg. Co.* v. *Mapes, supra,* 216 N. Y. 362, 372, 373; see, also, *Arnold* v. *New York, W. & B. R. Co.,* 173 App. Div. 764; *Koch* v. *Ellwood,* 138 App. Div. 584; *Shinnecock Hills & Peconic Bay Realty Co.* v. *Aldrich,* 132 App. Div. 118, affd. 200 N. Y. 533.)

Judge Dye considers it significant that the proof '' fails to show that the cultivation incident to the garden utilized the whole of the premises claimed '' (opinion, p. 98). There surely is no requirement in either statute or decision that proof of adverse possession depends upon cultivation of '' *the whole* '' plot or of *every foot* of the property in question. And, indeed, the statute — which, as noted, reads '' *usually* cultivated or improved '' — has been construed to mean only that the claimant's occupation must '' consist of acts such as are usual in the ordinary cultivation and improvement of similar lands by thrifty owners.'' (*Ramapo Mfg. Co.* v. *Mapes, supra,* 216 N. Y. 362, 373.) The evidence demonstrates that by far the greater part of the four lots was regularly and continuously used for farming, and, that being so, the fact that a portion of the property was not cleared should not affect the claimant's ability to acquire title by adverse possession: any frugal person, owning and occupying lands similar to those here involved, would have permitted, as Lutz did, some of the trees to stand — while clearing the bulk of the property — in order to provide a source of lumber and other tree products for his usual needs. The portion of the property held subservient to the part actively cultivated is as much '' occupied '' as the portion actually tilled. The nature of the cultivation engaged in by Lutz was more than adequate, as his neighbors' testimony establishes, to give the owner notice of an adverse claim and to delimit the property to which the claim related. The limits of the parcel in suit were indicated in a general way by boundaries natural as well as man-made: the declivity to Leroy

Avenue, the " traveled way ", and Gibson Place. Apart from that, however, the evidence discloses that the bulk of each of the four lots was cultivated, and — even putting to one side the fact that the cottage, called " Charlie's house ", had been actually occupied and lived in for upwards of thirty years — such substantial use was enough to put the owner on notice that his whole lot was claimed.

In short, there is ample evidence to sustain the finding that William Lutz actually occupied the property in suit for over fifteen years under a claim of title. Since, then, title vested in Lutz by 1935, the judgment must be affirmed. To rule otherwise, on the ground that the weight of evidence is against that finding — a view which I do not, in any event, hold — is to ignore the constitutional provision that limits our jurisdiction to the review of questions of law (N. Y. Const., art. VI, § 7; see, also, Civ. Prac. Act, § 605).

I would affirm the judgment reached by both of the courts below.

Lewis, Conway and Froessel, JJ., concur with Dye, J.; Fuld, J., dissents in opinion in which Loughran, Ch. J., and Desmond, J., concur.

Judgments reversed, etc. [See 304 N. Y. 590.]