■ EAST 13TH STREET HOMESTEADERS' COALITION et al., Respondents, v LOWER EAST SIDE COALITION HOUSING DEVELOPMENT, Respondent-Defendant, and DEBORAH WRIGHT, as Commissioner of the Department of Housing Preservation and Development of the City of New York, et al., Appellants. [646 NYS2d 324] —Order, Supreme Court, New York County (Elliott Wilk, J.), entered November 13, 1995, which granted petitioners—plaintiffs' motion for a preliminary injunction to the extent of enjoining respondents-defendants from using self-help means to remove them from the buildings during the pendency of this action, reversed, on the law, the facts, and in the exercise of discretion, without costs, the motion denied and the preliminary injunction is vacated.

The petitioners are occupants of 537, 539, 541, and 545 East 13th Street, who brought this suit to prevent the City from removing them from these buildings to implement a Federally subsidized plan to rehabilitate the buildings and create low-income housing units. A detailed recitation of the facts and procedural history of this action can be found in *East 13th St. Homesteaders' Coalition v Wright* (217 AD2d 31). The narrow issue presently on appeal is whether the petitioners should be granted a preliminary injunction barring their eviction pending trial on the issue of whether legal title to the property passed to them through adverse possession.

A preliminary injunction is warranted only upon a showing

of (1) a likelihood of success on the merits of the underlying claim; (2) irreparable injury absent granting the injunction; and (3) that a balancing of the equities weighs in favor of the injunction (*Aetna Ins. Co. v Capasso*, 75 NY2d 860, 862; *Grant Co. v Srogi*, 52 NY2d 496). Because it is a drastic remedy, injunctive relief is reserved for those cases presenting a clear legal right thereto (*Matter of McGuinn v City of New York*, 219 AD2d 489, *lv dismissed in part and denied in part* 87 NY2d 966).

Considering that the petitioners claim the apartment buildings upon a theory of adverse possession, they must show that they are likely to prove, by clear and convincing evidence (*643 Coster St. Realty v Acsun Realty Co.*, 174 AD2d 473, 474), that for a period of ten years they actually possessed the subject property at issue, and that their possession was open and notorious, exclusive, continuous, hostile, and under claim of right (*Spiegel v Ferraro*, 73 NY2d 622; *Garrett v Holcomb*, 215 AD2d 884, 885; *accord, City of Tonawanda v Ellicott Cr. Homeowners Assn.*, 86 AD2d 118, 120, *appeal dismissed* 58 NY2d 824).

Our review of the record reveals that petitioners are not likely to prove ten years of actual, continuous, open and notorious possession of the subject buildings (between 1984 and 1994, the period here in question). Since petitioners' claim of right is not supported by a written instrument, they must show actual, not constructive, possession to establish the requisite temporal element (RPAPL 521; *Van Valkenburgh v Lutz*, 304 NY 95, 98; *Birnbaum v Brody*, 156 AD2d 408). The record contains documentary and photographic evidence that the City sealed the buildings numerous times during the claimed period, and that the occupants had to break these seals, sometimes with a sledgehammer, to reenter the buildings.

The petitioners argue that there was a chain of possession of coalition members in all of the buildings during the requisite period to support the requirement of continuous ownership, but the record does not reveal that such successive possession was continued by an unbroken chain of privity such that it could be tacked for adverse possession purposes (*Garrett v Holcomb*, 215 AD2d 884; *Pegalis v Anderson*, 111 AD2d 796; *Belotti v Bickhardt*, 228 NY 296, 306). In fact, there is no evidence of privity between successive occupants of the apartments, nor is there evidence of any intended transfers. In addition, some of the apartments were vacant for some period, such that the vacating occupant and the new occupant apparently had no contact at all (*see, Berman v Golden*, 131 AD2d 416).

In sharp distinction, the claimant in *Ray v Beacon Hudson Mtn. Corp.* (88 NY2d 154), the case relied upon in the dissent, was the same person who had occupied the property there in issue from 1963 through 1988, a period of twenty-five years. Such is not the case here, where we are presented with an oft-interrupted number of unrelated occupants.

Since petitioners have failed to demonstrate ten years of continuous possession of the subject property, a condition precedent to a claim for adverse possession, the likely success of which is evaluated on this motion, and respondents have countered with proof which persuasively weighs against the petitioners' claims, the order appealed is reversed, and the motion for a preliminary injunction denied. Concur—Milonas, J. P., Rosenberger, Williams and Mazzarelli, JJ.

Kupferman, J., dissents in a memorandum as follows: I would affirm.

In the recent case of *Ray v Beacon Hudson Mtn. Corp.* (88 NY2d 154, 156), Judge Titone, speaking for a unanimous Court, stated: "In determining whether the common-law requirement of 'continuity of possession' has been met in an adverse possession claim to an estate in land, a court should consider not only the adverse possessor's physical presence on the land but also the claimant's other acts of dominion and control over the premises that would appropriately be undertaken by owners of properties of similar character, condition and location. Thus, we conclude that plaintiffs' occupancy of the summer cottage in a now-defunct resort town for one month during the summer, coupled with their regular efforts taken to secure and improve the premises and to eject trespassers during their absences for the 10-year statutory period while all neighboring structures collapsed due to vandalism or abandonment, satisfied the element of continuous actual possession."

This statement is, mutatis mutandis, substantially analogous to our current situation.

Further on in his opinion, Judge Titone states "[P]laintiffs' installation of utilities and over-all preservation of the cottage, a permanent and substantial structure, in a veritable ghost town, for the duration of the statutory period demonstrates continuous, actual occupation of land by improvement." (*Supra,* at 161.)

In the case at bar, there is no doubt that the plaintiffs made improvements and attempted to preserve the buildings involved in an area that could be considered the equivalent of a "ghost town". Moreover, as in the *Ray* case, where the occupation was for only one month during the summer, we have

intermittent occupation by various people who are a part of a cohesive group.

In 1977 and 1978, by in rem proceedings, the City acquired title to the four buildings in question. As the IAS Court found at the hearing it conducted, by the early 1980's the buildings had become a "neighborhood hazard, housing drug activity, litter and trash". The City having defaulted on its obligation to maintain order and ensure tranquility, the plaintiffs moved into the vacant buildings.

The City now indicates that it is prepared to gut the buildings and rehabilitate the neighborhood with private funds and Federal tax credits after having failed to do so for many years. This may be a consummation to be wished but not necessarily a firm result. In the interim, the preliminary injunctive relief granted by the IAS Court should be continued, preventing a warrant of eviction, until such time as there can be a definitive conclusion as to the claim that the plaintiffs have adverse possession.