Children's Magical Garden, Inc. v Norfolk St. Dev., LLC (2018 NY Slip Op 05223)





Children's Magical Garden, Inc. v Norfolk St. Dev., LLC


2018 NY Slip Op 05223


Decided on July 12, 2018


Appellate Division, First Department


Tom, J., J.



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on July 12, 2018
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

David Friedman J.P.
Dianne T. Renwick
Peter Tom
Marcy L. Kahn
Cynthia S. Kern, JJ.


152094/14 5252 

[*1]Children's Magical Garden, Inc., Plaintiff-Respondent,
v
Norfolk Street Development, LLC, et al., Defendants-Appellants.



Defendants appeal from the orders of the Supreme Court, New York County (Debra A. James, J.), entered November 23, 2015 and July 5, 2016, which denied their motions to dismiss the complaint.




Rex Whitehorn & Associates, P.C., Great Neck (Rex Whitehorn of counsel), for Norfolk Street Development, LLC, S & H Equities (NY), Inc., and Serge Hoyda, appellants.
Herrick Feinstein LLP, New York (Janice I. Goldberg and Arthur G. Jakoby of counsel), for 157, LLC, appellant.
Sidley Austin LLP, New York (Benjamin F. Burry, Nicholas P. Crowell, Angela Zhu and Alexander I. Cohen of counsel), for respondent.



TOM, J.


This appeal involves what must be an extremely rare occurrence in Manhattan, to wit, a claim of adverse possession of prime real estate located in the Lower East Side neighborhood of Manhattan. Specifically, we are presented with a dispute over a vacant corner lot located at 157 Norfolk Street at its intersection with Stanton Street, one block south of East Houston Street in lower Manhattan. Plaintiff Children's Magical Garden (the Garden), a not-for-profit corporation incorporated in 2012, is a community garden founded by its members in 1985 on Lots 16, 18, and 19 in Block 154. The Garden was founded by activists outraged by the accumulation of garbage and used needles on the lots located across the street from an elementary school.
Defendants Norfolk Street Development, LLC, S & H Equities (NY), Inc., and Serge Hoyda are alleged to have been the record owners of Lot 19 during the prescriptive period. [*2]Defendant 157, LLC is alleged to have purchased the property from Norfolk Street Development on or about January 6, 2014.
The central issue presented by this appeal is whether plaintiff stated a claim for adverse possession of Lot 19 by sufficiently pleading the continuous possession element. We find that the complaint sufficiently pleaded a cause of action for adverse possession (see CPLR 3211[a][7]; Walling v Przybylo, 7 NY3d 228, 232 [2006]; United Pickle Prods. Corp. v Prayer Temple Community Church, 43 AD3d 307, 308 [1st Dept 2007], lv denied 9 NY3d 977 [2007]).
The complaint alleges that more than 30 years ago, in 1985, the Garden was founded by community activists who sought to improve their neighborhood. Because crime plagued the neighborhood at that time, and used needles and piles of garbage littered the abandoned corner lot in question - across the street from elementary school P.S. 20 - these neighborhood activists decided to build what plaintiff describes is now a "neighborhood icon." Plaintiff also states that defendants and their predecessors abandoned Lot 19 as a "shameful eyesore" and that plaintiff and its members took possession and "by their tremendous efforts transformed the Premises into a vibrant community garden where generations of children have thrived."
Among other things, Garden members, starting in 1985, cleared garbage and debris, pulled weeds, and erected a chain-link fence to enclose the premises. They planted fruit, vegetables, plants, bushes and trees, including an apple tree and a dogwood tree, built a seesaw and other playground equipment, and added a stage used for concerts and to display art. Over the years, neighborhood children have used the stage to put on performances. At some point, members also built a fish pond and pathways throughout the Garden.
Plaintiff also alleged that the Garden has never been open to the general public, and that the premises can only be accessed by first unlocking the gate with a special key secured only by members. Members keep the gates locked at night and any other time the Garden is not in use under the supervision of a member.
In addition, over many years the Garden hosted various schools, afterschool and camp programs for science, math, culinary arts, and community service activities. Each year, the Garden hosted local youth for the planting of a "pizza garden" and in the fall held a pizza-making party on the premises where children enjoyed the harvest of vegetables.
Other events held at the Garden included poetry readings and music events during the summers, and each September the Garden hosted a concert as a participant in the Vision Festival
Jazz in Gardens Series. The Garden was also opened each December 21st for a Winter Solstice celebration with art and live music.
Plaintiff maintains that throughout all these years the Garden's members protected the Garden's claim of right, including against defendants. As an example, plaintiff alleges that in August 1999, defendants Hoyda, Norfolk, and S & H Equities or their agents cut through the Garden's exterior fence and entered the premises. They claim that a tree planted more than a decade earlier was chopped down and a children's clubhouse was damaged. A makeshift interior fence was also erected. However, Garden members immediately tore down the fence and removed it. Members also repaired the other damage.
According to plaintiff, in May 2013, a group of men with power tools and construction equipment accompanied by private security guards arrived at the Garden, and signaled their intention to breach the exterior fence. A standoff took place with Garden members blocking the gate. Ultimately, police officers ordered the group of men to be given access to the premises. Plaintiff alleged the men were defendants or their agents and that among them was an attorney purporting to represent defendant Hoyda.
The men "trampled, destroyed, and dug up plants,
shrubs, trees" and erected a metal fence inside the Garden purporting to barricade Lot 19 from the remainder of the other two lots. Defendants also employed a private security firm to guard [*3]the premises.
Plaintiff states that despite requests from various public officials to remove the fence, the fence still cuts across the premises rendering certain vegetable beds, trees and a meditation area inaccessible.
In July 2013, the other lots that make up the Garden - 16 and 18 - were preserved under New York City's GreenThumb program after Manhattan Community Board 3 passed a resolution declaring that it "very strongly favors a proposal to the extent possible to preserve the whole community garden." Under that program, the New York City Department of Parks and Recreation enters into licensing agreements with community groups which create and maintain gardens on city-owned vacant property.
According to the record evidence, on or about December 15, 1998, defendant Serge Hodya, through 28 Properties, Inc. (28 Properties), entered into a contract of sale to purchase 157 Norfolk Street, Lot 19, from 88 Holding Corp. In the contract, 88 Holding warranted that it would deliver Lot 19 "vacant and free of any occupancy and any claim of right of occupancy." In or about November 1999, 28 Properties brought an action against 88 Holding for specific performance and a declaration that it must satisfy the vacancy condition of the contract. 28 Properties' complaint alleged that "a portion of the Premises, has been, and remains, occupied by third parties claiming a right to use and occupy a portion of the Premises (emphasis added)."
In an affidavit filed in that action, after 88 Holding took no "action to remove the unlawful occupants," defendant Serge Hodya admitted that 88 Holding "claimed that such occupancy was illegal and unauthorized." Despite the foregoing, Hodya "waive[d] the condition in the contract that the premises be delivered vacant (id., ¶ 8; 253, ¶ 12)". Accordingly, by order entered May 30, 2003, the court (Walter B. Tolub, J.) granted 28 Properties' motion for summary judgment.
On or about August 27, 2003, defendant Norfolk Street Development LLC (Norfolk, d/b/a 28 Properties), in which Hodya is a member, and an affiliate of defendant S & H Equities (NY), Inc., became the record owner of Lot 19. By deed, dated January 9, 2014, Norfolk conveyed Lot 19 to defendant 157, LLC, allegedly for $3,350,000 and other consideration.
Plaintiff commenced this action in 2014, alleging that defendants had filed an application to construct a six-story, 70-foot-tall residential building on Lot 19. The complaint asserts six causes of action, including one for declaratory judgment that plaintiff is the sole and exclusive legal and equitable owner of Lot 19, via adverse possession. With regard to that cause of action, plaintiff alleged that the Garden was surrounded by a fence and has been cultivated and improved and accessed by a locked gate since 1985. Plaintiff also alleged that it had possessed Lot 19 continuously under a claim of right for not less than 10 consecutive years, and had possessed it in a hostile, actual, open and obvious manner which was exclusive and continuous for that time period.
Defendants each moved to dismiss the complaint for failure to state a cause of action, claiming that since the Garden did not exist until December 2012, it could not have occupied the property for the requisite period. They also asserted that the complaint fails to allege any occupancy by plaintiff was done under a claim of right.
In opposition, Kate Temple-West, the president and director of the Garden, stated that when she moved to 153 Norfolk Street in 1997, she observed that the Garden, which was enclosed by a fence, had various trees and bushes planted in it and structures that were regularly maintained. Temple-West also observed children playing in the Garden, which was managed by members, who controlled access with a key and supervised visitors. Temple-West became involved with the Garden soon after moving to the neighborhood and has since helped others to excavate and demolish the burned-down remains of a building that once stood on Lot 19, using shovels, pick-axes, and wheelbarrows. Beginning in or about 2000, Temple-West hired trucks to [*4]haul away rubble and debris from the Garden and has since hired dumpsters and/or trucks approximately once per year for maintenance.
Since Temple-West's arrival in 1997, she and other members have installed chicken wire on the perimeter chain-link fence to keep rats and garbage out. They have laid down soil and compost, planted various types of trees and shrubs, constructed brick paths that run through the garden, built a swing set, and observed and/or overseen the installation of a second seesaw, concrete art sculptures, a traditional medicine plant bed, a youth meditation area, and a rain garden. In 2003, Temple-West became the Garden's co-director. She later became the director. In December 2012, the Garden incorporated and took title to Lot 19. Temple-West became the Garden's president and director. David Currence and Eve Berkson are the two other board members.
Temple-West noted the Garden's role in the community since her arrival, including hosting various student groups, the Cub Scouts, pizza-making parties, concerts, poetry readings, and movie nights, and noted recent events, including the installation of a chicken coop in 2012. As of the time of submission of Temple-West's opposition to defendants' motion to dismiss, the Garden had over 20 active adult members and 30 children who used the Garden each week, and events hosted at the Garden are attended by hundreds of community members.
In his affidavit, Barden Prisant explained he was a member of the Garden from about 1985 until 1991, during which time he, Carmen Rubio, and Alfredo Feliciano cultivated, improved, and maintained the Garden. In 1985, the Garden was filled with piles of garbage, discarded metal, and other debris. Prisant, Rubio, Feliciano, and others cleaned up the Garden, planted trees and bushes, and oversaw the installation of structures, including a seesaw, pond, and wooden stage. Prisant remained a member of the Garden until 1991, when he moved away. During his time as a member, Prisant, who contributed financially to the Garden, observed that no one was permitted access unless either he, Feliciano, or Rubio had opened the gates and was present, and that the Garden was enclosed by a chain-link fence, which was accessible by gates at Stanton and Norfolk Streets.
During Prisant's involvement with the Garden, members put on various programs, including a May Day festival at which a Maypole was erected in the Garden. At Christmas time each year, children would decorate a pine tree which he and Feliciano had planted. The wooden stage was used for painting and acting classes as well as for musical performances.
Prisant averred that since 1985 the Garden has been enclosed by a chain-link fence. After Prisant moved in 1991, he converted his wife's studio apartment at 151 Norfolk Street into his office and passed the Garden daily, on his way to and from work. For approximately eight years thereafter, on a daily basis he observed that the Garden, which had a steady growth of trees and plantings, remained enclosed by a chain-link fence, with gates that were kept locked unless the Garden was under supervised use. He also observed during that time period that Rubio, Feliciano and others he understood to be members continued the care and maintenance of the Garden.
Supreme Court denied the motions to dismiss. In so doing, the court found that no allegations in the complaint and no documentary evidence showed that plaintiff overtly acknowledged defendants' ownership of the property or defeated plaintiff's assertion that it occupied the property under a claim of right. Thus, the court found that for pleading purposes the complaint adequately asserted a claim of right. The court also rejected defendants' contention "that the plaintiff's occupancy was not continuous for the statutory period," finding that plaintiff's recent date of incorporation was inconsequential and that plaintiff adequately pleaded an unbroken chain of privity between the members of the Garden for the statutory period. We now affirm.
On a motion to dismiss pursuant to CPLR 3211, we afford the "pleading ... a liberal [*5]construction," accept the facts as alleged in the complaint as true, "accord plaintiffs the benefit of every possible favorable inference," and thus "determine only whether the facts as alleged fit within any cognizable legal theory" (Leon v Martinez, 84 NY2d 83, 87-88 [1994]).
In order to establish a claim of adverse possession, a plaintiff must prove that the possession was: (1) hostile and under a claim of right; (2) actual; (3) open and notorious; (4) exclusive; and (5) continuous throughout the 10-year statutory period (see Walling v Przybylo, 7 NY3d 228, 232 [2006]). In addition, where, as here, the claim of right is not founded upon a written instrument, the party asserting title by adverse possession must establish that the land was "usually cultivated or improved" or that the land "has been protected by a substantial enclosure" (see former RPAPL 522; Estate of Becker v Murtagh, 19 NY3d 75, 81 [2012]). The only elements in dispute here are the "claim of right" and "continuous" elements.
Defendants argue that plaintiff failed to plead sufficient facts evidencing continuous possession by its predecessor members for the statutory period, through an unbroken chain of privity, by tacking periods between anonymous possessors who are not alleged to have intended to transfer title to the incorporating members. This argument is based on the fact that plaintiff was incorporated in 2012 and defendants' contention that there is no allegation that plaintiff had the necessary privity with Garden members prior to incorporation. This argument fails, particularly at the pleading stage of this litigation.
It is well settled that an unincorporated association may adversely possess property and later incorporate and take title to it because "[a]lthough the unincorporated society could not acquire title by adverse possession, its officers could for its benefit, and when the corporation is duly organized the prior possession may be tacked to its own to establish its title under the statute of limitations" (Reformed Church of Gallupville v Schoolcraft, 65 NY 134, 134 [1875] [emphasis added; citations omitted]).
In Reformed Church of Gallupville, the Court of Appeals recognized that a formerly unincorporated society "composed of the same individuals or persons claiming in succession under the same title and in the same right" for 25 years, "who managed its affairs and actually controlled and possessed its property . . . "could at any time have taken a grant for the benefit of the society, and could acquire title by adverse possession for the benefit of the society" (id. at 145).
Here, the complaint sufficiently alleges possession by the Garden members for nearly 30 years before the Garden was incorporated. As set forth above, the allegations include significant work by the members to clean the abandoned lot and transform it into a treasured community resource containing a fish pond, playground equipment, trees, plants, and a stage, all of which has been fenced-off with access restricted by members. Such allegations, if proven, would establish adverse possession by the members for the statutory period.
Further, to the extent that the complaint alleges and the record evidence shows that there has been a succession of different individual Garden members, "[a]ll that is necessary in order to make an adverse possession effectual for the statutory period by successive persons is that such possession be continued by an unbroken chain of privity between the adverse possessors" (Belotti v Bickhardt, 228 NY 296, 306 [1920]).
Since it is alleged that the Garden members had adversely possessed the lot for the statutory period long before the Garden was incorporated, the question of tacking is not at issue here (compare Keena v Hudmor Corp., 37 AD3d 172, 173-174 [1st Dept 2007] [issue of fact presented as to whether predecessors entered parcel under a claim of right, whether they intended to convey the parcel to plaintiffs, and thus whether plaintiffs could tack prior owners possession onto their ownership to meet the statutory period]). Indeed, based on the allegations in the complaint, the members possessed the lot for more than 10 years and could transfer their interest in the lot to the corporation in 2012.
Defendant 157 LLC contends that the complaint does not satisfy the standards set forth in Reformed Church of Gallupville since the complaint refers only to "anonymous Members'" and "fails to allege that any Members have continuously been a Member of the Unincorporated Garden and [CMGI] for the entire 30 year period." However, 157 LLC places too high a burden on plaintiff at the pleading stage. While Reformed Church of Gallupville does note that the society in question was "composed of the same individuals or persons claiming in succession under the same title, and in the same right" (65 NY at 145), the complaint here, as supplemented by affidavits, satisfies that standard.
In particular, Prisant stated that he was a member of the Garden from 1985 to 1991 during which time he, Carmen Rubio, and Alfredo Feliciano cultivated, improved, and maintained the Garden. However, he also explained that from 1991 to 1999 he worked near and passed by the Garden daily and observed Rubio and Feliciano and other members continue to maintain and possess the Garden, and that it remained enclosed by a fence and locked gates. In addition, Temple-West also stated that from 1997 to 2013 she and other members continued to possess the Garden and keep it enclosed by the fence and locked gates. These statements, along with the complaint, adequately allege continuous possession of Lot 19 for more than the statutory period by the same individuals and members of the Garden.
157 LLC's reliance on cases involving transients seeking to adversely possess separate units in residential apartment buildings is unavailing. For example, in East 13th St. Homesteaders' Coalition v Lower E. Side Coalition Hous. Dev. (230 AD2d 622, 623 [1st Dept 1996]), we denied a coalition of homesteaders who sought adverse possession of an apartment building a preliminary injunction (a different standard of review), finding that there was no evidence of privity between successive occupants of the apartments, or evidence of any intended transfers, with some apartments having remained vacant for extended periods, "such that the vacating occupant and the new occupant apparently had no contact at all." Unlike East 13th St., here, the allegations are that the same individual members of the Garden worked together, enclosed the property by a chain-link fence, limited access by locked gates, and improved the property.
In stark contrast to the allegations in this case, in Rainbow Coop v City of New York City (2009 NY Slip Op 32653 [U], *6 [Sup Ct, NY County 2009]), relied on by defendants, also involving a claim of adverse possession over an apartment building, the trial court rejected the plaintiff association's claim, as it was supported only by the testimony of one tenant who could not speak for the other tenants' occupancy of their individual apartments.
Nor are defendants aided by referencing the 1999 effort allegedly by the Hodya defendants to retake possession of the premises. The allegations in the complaint are that the statutory period had been met by 1995, and, in any event, the 1999 intrusion did not cause any disruption in the Garden's exclusive possession, as the members took swift action to repair the damage caused by the unidentified intruders (see Ray v Beacon Hudson Mtn. Corp., 88 NY2d 154, 156 [1996] [efforts to eject trespassers helped satisfy element of continuous actual possession]). We also reject 157 LLC's contention that the post-2008 version of RPAPL 501, which requires the adverse possessor to have a "reasonable basis for the belief that the property belongs to the adverse possessor," has any bearing on this matter since there are no adverse possession claims alleged to have ripened after 2008.
Defendants also argue that plaintiff has not sufficiently pleaded the mandatory element of a claim of right under Walling v Przybylo (at 232). Specifically, defendants maintain that plaintiff must plead an initial claim in the land rooted in expectations that have an "objective basis in fact." This claim is without merit.
The "hostile and under a claim of right" element under Walling contains "two parts ... [that] have been viewed as virtually synonymous. Both parts require that the possession be truly [*6]adverse to the rights of the party holding record title" (Walling v Przybylo, 24 AD3d 1, 6 [3d Dept 2005], affd 7 NY3d 228 [2006]). In Humbert v Trinity Church (24 Wend 587, 604 [1840]), the Court for the Correction of Errors, the predecessor to the Court of Appeals, held that ownership can be obtained by adverse possession even where the possessor claims title wrongfully, fraudulently and "with whatever degree of knowledge that he has no right." The present day Court of Appeals has cited Humbert approvingly, noting that "the fact that adverse possession will defeat a deed even if the adverse possessor has knowledge of the deed is not new" (Walling, 7 NY3d at 233).
In Estate of Becker (19 NY3d 75, supra), the Court of Appeals further explained that the element of hostility is "satisfied where an individual asserts a right to the property that is adverse to the title owner and also in opposition to the rights of the true owner'" (19 NY3d at 81, quoting Walling 7 NY3d at 232-233). Further, the Estate of Becker court noted that "[a] rebuttable presumption of hostility arises from possession accompanied by the usual acts of ownership, and this presumption continues until the possession is shown to be subservient to the title of another" (19 NY3d at 81; see also Monnot v Murphy, 207 NY 240, 245 [1913] ["The ultimate element in the rise of a title through adverse possession is the acquiescence of the real owner in the exercise of an obvious adverse or hostile ownership through the statutory period"]).
In Walling, the Court of Appeals noted that "an adverse possessor's actual knowledge of the true owner is not fatal to an adverse possession claim," absent an overt acknowledgment by the claimant during the prescription period (Walling v Przybylo, 7 NY3d at 233, citing Van Valkenburg v Lutz, 304 NY 95, 99-100 [1952]). "The issue is actual occupation,' not subjective knowledge (id., citing Humbert v Trinity Church, 24 Wend 587, 604 [1840]). Stated another way, "[c]onduct will prevail over knowledge, particularly when the true owners have acquiesced in the exercise of ownership rights by the adverse possessors" (id. at 232-233). A presumption of hostility will not apply, however, where the use of disputed land is permissive (Estate of Becker, 19 NY3d at 82).
Here, the complaint sufficiently alleges that plaintiff's predecessor members continuously occupied Lot 19, improved the land, restricted entry and kept out intruders, and thus actually occupied the land in a manner adverse to the true owner. Therefore, the complaint satisfies the "hostile and under a claim of right" element. Moreover, as neither plaintiff nor the predecessor members have overtly acknowledged any of defendants' rights to Lot 19, and there is no indication that the use was permissive, Supreme Court properly found that the claim of right element had been sufficiently asserted.
Defendants, relying on this Court's holding in Joseph v Whitcombe (279 AD2d 122, 126 [1st Dept 2001]), seek to limit the "claim of right" element to those situations in which "the adverse possessor is title owner of the adjacent parcel, whose original boundaries extended to the disputed parcel . . . or whose use of the disputed structure [or land] derived from prior ownership." However, as the foregoing controlling decisions from the Court of Appeals make clear, valid adverse possession claims are not limited to such circumstances. Indeed, "[r]educed to its essentials, [the elements of adverse possession] mean[] nothing more than that there must be possession in fact of a type that would give the owner a cause of action in ejectment against the occupier throughout the prescriptive period" (Brand v Prince, 35 NY2d 634, 636 [1974]). In any event, in Joseph the defendant overtly acknowledged the record owner's ownership of the disputed property and that he was a squatter. Finally, Joseph concerned a motion for summary judgment, a very different standard of review than this appeal.
Moreover, unlike this case, in All the Way E. Fourth St. Block Assn. v Ryan-Nena Community Health Ctr. (9 Misc 3d 1122(A) [Sup Ct, NY County 2005], affd 30 AD3d 182 [1st Dept 2006], lv denied 7 NY3d 713 [2006]), which also involved a community garden, the Block Association sought and received a month to month tenancy under Operation Greenthumb for the [*7]disputed parcel and from 1981 through 1994 when the Association erected its fence, the Association sought to determine the true ownership of the lot so that it might receive the consent of the owner for the erection of the fence. No such allegations which demonstrate overt acknowledgement of the true owner's ownership are present in this case.
Since we conclude that plaintiff has adequately pleaded a cause of action for adverse possession, we also find that Supreme Court properly declined to dismiss the remaining causes of action at this juncture.
Accordingly, the orders of the Supreme Court, New York County (Debra A. James, J.), entered November 23, 2015 and July 5, 2016, which denied defendants' motions to dismiss the complaint, should be affirmed, without costs.
All concur except Friedman, J.P.
who concurs in a separate Opinion.




FRIEDMAN, J.P. (concurring)


I concur in affirming the denial of the motion to dismiss on the ground that the affidavit of Kate Temple-West sufficiently alleges, for purposes of pleading an adverse possession claim, that the corporate plaintiff's alleged predecessor-in-interest, an alleged unincorporated association (Unincorporated CMG), continuously occupied the subject parcel for at least ten years (see RPAPL 501[2]; CPLR 212[a]) before July 7, 2008. On that date, a statutory amendment took effect that made "a reasonable basis for the belief that the property belongs to the adverse possessor" (RPAPL 501[3]) a necessary element of an adverse possession claim [FN1]. Temple-West alleges that she became a member of Unincorporated CMG in 1997 and remained so until the corporate plaintiff (of which she is now president) was organized in 2012 and succeeded to Unincorporated CMG's interest. Thus, based on the allegations of the complaint as supplemented by Temple-West's affidavit, plaintiff may be able to prove that its claim to ownership of the subject parcel through adverse possession ripened before the amendment to the RPAPL became effective. Whether Unincorporated CMG's occupation of the parcel was interrupted by the attempt to oust it in 1999 (an incident alleged in the complaint) cannot be determined as a matter of law on a pleading motion.
I disagree with the majority to the extent it holds that the complaint, as supplemented by the affidavit of Barden Prisant, sufficiently alleges that Unincorporated CMG continuously occupied the parcel from 1985 to 1997. Prisant alleges that he was a member of Unincorporated CMG from 1985 to 1991, when he moved out of the neighborhood. Plaintiff has not identified any person who was a member of Unincorporated CMG, or any persons who were members of it, from 1991 to
1997 [FN2]. Plaintiff cannot predicate its adverse possession claim on an occupation by an [*8]unincorporated association without identifying particular individuals who were members of the association for the entire period relied upon (cf. Reformed Church of Gallupville v Schoolcraft, 65 NY 134, 145 [1875] [permitting a claim of adverse possession based, in part, on an occupation by an unincorporated association composed of identified members and officers]). However, if plaintiff believes that it is able to identify particular individuals who were members of Unincorporated CMG from 1991 to 1997, it may seek leave to amend the complaint to add such allegations.
Orders of the Supreme Court, New York County (Debra A. James, J.), entered November 23, 2015 and July 5, 2016, affirmed.
Opinion by Tom, J. All concur except Friedman, J.P., who concurs in a separate Opinion.
Friedman, J.P., Renwick, Tom, Kahn, Kern, JJ.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: JULY 12, 2018
CLERK



Footnotes

Footnote 1:Plaintiff does not allege that Unincorporated CMG had a reasonable basis for believing (or that it actually believed) that the parcel belonged to it before the adverse possession claim ripened. Under Walling v Przybylo (7 NY3d 228 [2006]), this was not a bar to an adverse possession claim before the aforementioned amendment of RPAPL 501.

Footnote 2:Prisant's affidavit states that he continued to "pass by the garden [on the parcel] daily on my way to and from work" for "approximately eight years" after his membership ceased in 1991, and that during such walks he observed that the garden established by Unincorporated CMG was still maintained on the property. However, Prisant's statement that, at unspecified times during this eight-year period, he saw two people who had been members of Unincorporated CMG at the same time he was (Carmen Rubio and Alfredo Feliciano) engaged in "care and maintenance of the garden" does not constitute an allegation that Rubio (who apparently is now deceased) and Feliciano remained members of Unincorporated CGM during the entire period in question. Rubio and Feliciano are not even mentioned in Temple-West's affidavit.